IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| SHA'LACE REANE' NICOLE GIPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 123-016 |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Acting Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff applied for SSI on May 23, 2019, alleging a disability onset date of September 21, 2017. Tr. ("R."), doc. no. 8, pp. 49, 283.[1] Plaintiff was twenty-nine years old at her alleged

---

[1] The Court notes some portions of the record reflect a disability onset date of January 14, 1988, Plaintiff's date of birth. See, e.g., R. 131-32. Because the relevant period of disability consideration for an SSI application is the month of the application through the date of the administrative law judge's decision, see Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam), this discrepancy is not material to the Court's analysis.

disability onset date and thirty-three years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 61, 155, 283. Plaintiff alleged disability based on the following conditions: osteoarthritis, degenerative disc disease, Sjogren's syndrome, asthma, fibromyalgia, patellofemoral disorder, status-post right knee arthroscopy, status-post left knee arthroscopy, obesity, anxiety, post-traumatic stress disorder, fatigue, scoliosis, and visual impairment. R. 51-52, 132. Plaintiff completed high school and two years of college, and prior to her alleged disability date, accrued a history of past relevant work as a customer clerk. R. 55, 59, 358.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 131-55. Plaintiff requested a hearing before an ALJ, and ALJ Flora Lester Vinson held a hearing by telephone on October 27, 2021. R. 67-69, 187. At the hearing, the ALJ heard testimony from Plaintiff, represented by counsel, as well as from Jessica Conard, a Vocational Expert ("VE"). R. 67-105. On December 28, 2021, the ALJ issued an unfavorable decision. R. 46.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since May 23, 2019, the application date (20 CFR § 416.971 *et seq.*).

2. The claimant has the following severe impairments: osteoarthritis, degenerative disc disease, Sjogren's syndrome, asthma, fibromyalgia, patellofemoral disorder, status-post right knee arthroscopy, status-post left knee arthroscopy, obesity, anxiety, and post-traumatic stress disorder (20 CFR § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR § 416.967(a) except she can: occasionally can climb ramps and stairs: never climb ladders, ropes, or scaffolds; occasionally balance, stoop, and crouch; and never kneel or crawl. The claimant should not have to operate a motor vehicle as part of the job duties, nor work in consistently wet conditions or the extremes of humidity. She should not have to work around pulmonary irritants, such as concentrated amounts of dusts, noxious odors, fumes, mists, gases, seasonal allergens, or poorly ventilated workspaces. She should not have to work in extreme cold, or extreme heat. Her ability to understand, remember and carry out instructions allows for the performance of uncomplicated, unskilled tasks [defined as tasks that can be learned in 1 month or less by just an on-the-job demonstration, and that require applying commonsense understanding to carry out detailed but uninvolved written or oral instructions]. She should work in a low stress setting [defined as no quotas or production-rate paced work and no jobs that require precise limits in tolerances and standards, such as bookkeeping.] Her use of judgment allows for making uninvolved work-related decisions [defined as decisions involving no more than a few concrete variables in or from standardized situations]. She is able to tolerate few changes in a routine work setting [and few changes is defined as no more than a few deviations from the core job duties]. She may have occasional interaction with co-workers; but no more than incidental in-person contact with the general public.

The claimant is capable of performing past relevant work as a customer clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR § 416.965).

5. The claimant has not been under a disability, as defined in the Social Security Act, since May 23, 2019, the date the application was filed (20 CFR 416.920(f)).

R. 51-61.

When the Appeals Council denied Plaintiff's request for review on September 15, 2022, R. 40, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). On February 17, 2023, Plaintiff filed *pro se* this civil action requesting reversal or remand of the unfavorable decision of the ALJ. (Doc. no. 1.) Giving a liberal construction to Plaintiff's *pro se* complaint and brief, the Court concludes Plaintiff argues the ALJ's decision is

3

not supported by substantial evidence because the ALJ failed to consider some of the medical evidence provided, improperly evaluated the opinions of Plaintiff's treating physicians, and improperly determined Plaintiff's RFC. (See doc. nos. 1, 13.) The Commissioner maintains the administrative decision is supported by substantial evidence and should therefore be affirmed. (See doc. no. 14 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec.,

363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

Although the Court liberally construes *pro se* briefs, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." Gamble v. Comm'r of Soc. Sec., 685 F. App'x 889, 890 (11th Cir. 2017) (*per curiam*) (citing Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (*per curiam*)). "To avoid abandonment, a party must plainly and prominently raise a claim or issue." Anglin v. Soc. Sec. Admin., 602 F. App'x 483, 484 (11th Cir. 2015). Plaintiff provides little substantive argument and makes no citations to the record or case law throughout her scattered filings. (See doc. nos. 1, 13.) The Court finds Plaintiff only plainly raised three issues: (1) the ALJ failed to consider some of the medical evidence provided; (2) the ALJ improperly evaluated the opinions of Plaintiff's treating physicians; and (3) and the ALJ improperly determined Plaintiff's RFC. (Doc. no. 13, p. 1, "Pl.'s Br.")

A. **Plaintiff's Argument that the ALJ Failed to Consider Some of the Medical Evidence Is Abandoned**

Plaintiff first raises the issue that the ALJ's decision was not supported by substantial evidence because the ALJ did not "hear out some of the information" provided. Pl.'s Br., p. 1. Although Plaintiff plainly raises this issue, she fails to pursue it in any meaningful way. In briefing, Plaintiff provides a detailed overview of her medical history, including a myriad of conditions claimed and not claimed through the Social Security application process. See id. at 2-11. Notably, however, Plaintiff does not identify any particular evidence the ALJ failed to consider, let alone explain how any oversight by the ALJ undermines her decision, and therefore the Court deems this argument abandoned. See Whitten v. Soc. Sec. Admin., Comm'r, 778 F. App'x 791, 793-94 (11th Cir. 2019) (*per curiam*) (raising issue properly in opening brief requires plain and prominent presentment "supported by arguments and citations to record" and recognizing issue may be abandoned when references are "buried within main arguments" or mentioned only in passing reference without supporting arguments) (citing Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681-82 (11th Cir. 2014)).

B. **The ALJ Properly Evaluated the Medical Evidence from Plaintiff's Treating Physicians**

1. **Regulations for Evaluating Medical Evidence for Claims Filed After March 27, 2017**

Because Plaintiff filed her SSI application on May 23, 2019, the ALJ had to assess medical evidence in the record under recently revised regulations. The revised regulations categorize medical evidence by type, some of which the ALJ is required to consider using specified criteria. See, e.g., 20 C.F.R. § 416.920b. A "medical opinion" is defined in the revised regulations as "a statement from a medical source about what you can still do despite your

impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed [below]." 20 C.F.R. § 416.913(a)(2). The revised regulations explain:

> Medical opinions in adult claims are about impairment-related limitations and restrictions in:
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2)(i). The revised regulations distinguish medical opinions from "other medical evidence," defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(2)(i). The regulations also separately address "objective medical evidence," defined as "medical signs, laboratory findings, or both, as defined in § 416.902(k)." 20 C.F.R. § 416.913(a)(1).

"For claims filed on or after March 27, 2017, the ALJ will not defer or give any specific evidentiary weight, including controlling weight to any medical opinion(s) or prior administrative medical finding(s). This regulation abrogated our earlier precedents applying the treating-physician rule, which required good cause to discount a treating physician's opinion." Sturdivant v. Soc. Sec. Admin., Comm'r, No. 22-13952, 2023 WL 3526609, at *3 (11th Cir. May 18, 2023) (per curiam) (citations and internal quotes omitted); 20 C.F.R. §

7

416.920c(a) (explaining ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources"); see also Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 897 (11th Cir. 2022) (explaining 2017 revision eliminated the treating-physician rule and prohibits ALJs from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight to any medical opinion(s)" (citations omitted)).  Elimination of the treating source rule is intended to remove "confusion about a hierarchy of medical sources and instead focus adjudication" on the evidence, as well as discourage courts from reweighing the evidence in violation of the deferential substantial evidence standard of review.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, nature and length of the treatment relationship, specialization, and other miscellaneous factors.  Harner, 38 F.4th at 897; 20 C.F.R. § 416.920c(c)(1)-(5).  Because supportability and consistency are the most important factors, the ALJ must articulate how these factors were considered for a medical source's opinions, but an ALJ is not required to articulate consideration of the remaining factors.  See Sturdivant, 2023 WL 3526609, at *3; 20 C.F.R. § 416.920c(b)(2).  In assessing supportability and consistency, the ALJ's analysis focuses on whether the medical source's opinion is supported by the objective medical evidence and supporting explanations and consistent with the other medical and nonmedical sources in the record.  See Sturdivant, 2023 WL 3526609, at *3; 20 C.F.R. § 416.920c(c)(1)-(2).

2. **Medical Evidence from Plaintiff's Treating Physicians**

Plaintiff argues the ALJ "misevaluated the opinion of all her treating physicians" including "Dr. Wolff Rheumatologist, Dr. Bojescul Orthopedic, Dr. Garner Pulmonary, [] Dr.

8

Vickery ENT, [and] Dr. Jodi Krueger MD." Pl.'s Br., p. 1.  To the extent Plaintiff implies the evidence provided by her treating physicians may be entitled to any substantial weight, as explained above, ALJ's are no longer required to give any specific evidentiary weight to treating physicians.  Instead, if the evidence provided by Plaintiff's treating physicians constitute medical opinions, the ALJ was required to assess each opinion's persuasiveness, including its supportability and consistency.  See Viotes v. Saul, No. 1:19-CV-24223-JLK, 2021 WL 681892, at *6 (S.D. Fla. Jan. 19, 2021) (ALJ only required to weigh medical source opinions that constitute "medical opinions"), *adopted by* 2021 WL 680909 (S.D. Fla. Feb. 22, 2021).  The ALJ did not assess the persuasiveness of evidence provided by the treating physicians Plaintiff names in her briefing.  However, the ALJ did not err in this regard because Plaintiff's treating physicians did not provide "medical opinions" as defined by the regulations during the administrative review process.

      **a.    Dr. Wolff**

Plaintiff argues that the ALJ misevaluated the opinions of Dr. Wolff, her treating rheumatologist.  Although there is evidence Plaintiff received treatment from rheumatologists, there appears to be no evidence signed by Dr. Wolff in the record.  See, e.g., R. 520 ("rheumatologist Dr. Cohen"); R. 535, 572 (documenting rheumatology visit progress notes signed by Alyce Oliver, MD); R. 632, 644, 656 (documenting rheumatology appointments scheduled with Dr. Renee Peterkin, MD); R. 641 (noting rheumatology attending physician Laura Carbone, MD).  Plaintiff does not identify what, if any, records provided by Dr. Wolff should have been considered by the ALJ.  See Pl.'s Br.  Even if Plaintiff provided records from Dr. Wolff to supplement the Court's review of the administrative record, they could not be considered by the Court when determining whether the Commissioner's decision is supported

9

by substantial evidence because they were not presented at the administrative level. A reviewing court, when presented with new evidence that was never presented for review at the administrative level, may only consider whether the new evidence necessitates remand under sentence six of § 405(g); a reviewing court may not consider the new evidence in determining whether the Commissioner's final decision is supported by substantial evidence. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267-68 (11th Cir. 2007); Norton v. Comm'r of Soc. Sec., 607 F. App'x 913, 917-18 (11th Cir. 2015) (*per curiam*); see also Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985) (noting general principle that court's review is limited to certified administrative record).

Here, Plaintiff has never asked for a sentence six remand, and even if she were requesting such, she would have to show "good cause" for failing to produce the new evidence at the administrative level. See Ingram, 496 F.3d at 1267. Plaintiff fails to provide any reason for not providing the records from Dr. Wolff at the administrative level.

### b.    Dr. Bojescul

Plaintiff also argues the ALJ misevaluated the opinions of Dr. Bojescul, Plaintiff's knee surgeon. Although there is evidence from Dr. Bojescul in the record, see R. 742-59, 860-71, 953-75, 986-994, 1028-29, 1133-34, 1200-03, 1939-42, and Plaintiff describes Dr. Bojescul's treatment and related knee conditions she experienced in briefing, see Pl.'s Br., p. 7, she does not demonstrate how the ALJ erred when evaluating evidence from Dr. Bojescul. None of Dr. Bojescul's records constitute a "medical opinion" as these records merely diagnose Plaintiff or document various treatments she received, giving no opinion on functional limitations. See Dye v. Comm'r of Soc. Sec., No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) (Doctor's finding that Claimant was unable to walk for long periods was not "medical

opinion"); Aderhold v. Kijakazi, No. 3:20CV5411/LAC/EMT, 2021 WL 3813387, at *14 (N.D. Fla. July 27, 2021) (Doctor's finding that Claimant could not sit for more than ten to fifteen minutes was not "medical opinion"), *adopted by* 2021 WL 3813328 (N.D. Fla. Aug. 26, 2021). Because Dr. Bojescul's treatment records were not medical opinions, the ALJ did not need to specifically articulate how she considered the persuasiveness of Dr. Bojescul's records.

Moreover, the ALJ did consider some of Dr. Bojescul's records in her assessment of Plaintiff's RFC when considering Plaintiff's knee pain, see R. 56, and Plaintiff fails to identify how the ALJ specifically erred when considering Dr. Bojescul's records. "'[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [his] decision,' so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." Lewen v. Comm'r of Soc. Sec., 605 F. App'x 967, 968 (11th Cir. 2015) (quoting Dyer, 395 F.3d at 1211); see also Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808-09 (11th Cir. 2013) ("[T]he ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits."). The ALJ's consideration of Dr. Bojescul's medical records demonstrates she did consider the medical records as a whole, and the Court finds no error in the ALJ's consideration of the medical evidence provided by Dr. Bojescul.

      **c.**    **Dr. Garner**

Next, Plaintiff argues the ALJ misevaluated the opinion of Dr. Garner, Plaintiff's treating pulmonologist. Pl.'s Br., p. 1. The record includes documentation of two visits to Dr. Garner in 2021, R. 1569-75, which the ALJ cited in her determination of Plaintiff's RFC, R. 56-57. Plaintiff fails to identify any specific error by the ALJ, and unlike her discussion of Dr. Bojescul, makes only a passing reference to Dr. Garner in briefing. See Pl.'s Br., p. 1. Because the ALJ did consider

11

evidence from Dr. Garner and Plaintiff fails to articulate any meaningful alleged error regarding the ALJ's consideration of Dr. Garner's medical records, the Court deems Plaintiff's argument that the ALJ misevaluated Dr. Garner's opinion abandoned. See Whitten, 778 F. App'x at 793-94.

### d. Dr. Vickery

Plaintiff next argues the ALJ misevaluated the opinion of Dr. Vickery, Plaintiff's treating ENT. Plaintiff states Dr. Vickery ordered a CT exam for Plaintiff "based off symptoms of bruising, extreme fatigue, memory loss, brain fogs, vision[] change, vertigo, numbness[] and tingling, shocking throughout the body, vitamin and mineral deficiency, chest pain, weakness, se[vere] migraines, [and] earache." Pl.'s Br., p. 9. However, the record contains documentation of only one visit to Dr. Vickery, where Plaintiff was treated for cerumen (earwax) impaction on June 17, 2021. R. 1700-03. Although Dr. Vickery noted in this record Plaintiff "is currently undergoing evaluation for bruising," the treatment record does not contain reference to a CT exam. Id. Nor does this evidence constitute a medical opinion requiring the ALJ to specifically articulate how she considered the evidence, as Dr. Vickery gave no opinion on Plaintiff's functional limitations. See id. Although the ALJ did not discuss Dr. Vickery's treatment record from Plaintiff's June 17, 2021 visit, this omission does not constitute error by the ALJ. See Lewen, 605 F. App'x at 968; Cooper, 521 F. App'x at 808-09; see also Cherry, 760 F.2d at 1193; Walters, 184 F. Supp.2d at 1185.

### e. Dr. Krueger

Lastly, Plaintiff argues the ALJ misevaluated the opinion of Dr. Krueger. The ALJ cited to some evidence provided by Dr. Krueger, see R. 56-57, but Plaintiff now provides several Family and Medical Leave Act forms completed by Kr. Krueger in 2008 and 2009 that were not part of

12

the administrative record, Pl.'s Br., pp. 16-20.  As discussed above, this Court may only consider whether new evidence necessitates remand under sentence six of § 405(g); a reviewing court may not consider the new evidence in determining whether the Commissioner's final decision is supported by substantial evidence.  Ingram, 496 F.3d at 1267-68; Norton, 607 F. App'x at 917-18; see also Wilson v. Apfel, 179 F.3d 1276, 1278-79 (11th Cir. 1999) (evidence attached to appellant's brief not properly before the court) (citing Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985)); Walters v. Barnhart, 184 F. Supp.2d 1178, 1185 (M.D. Ala. 2001) ("The plaintiff submits to the Court medical records which she did not present to the ALJ or the Appeals Council in support of her disability claim. These records are not part of the administrative record for review by this court.").  Again, Plaintiff has never asked for a sentence six remand, and even if she were requesting such, she would have to show "good cause" for failing to produce the new evidence at the administrative level.  See Ingram, 496 F.3d at 1267.  Plaintiff fails to provide any reason for not providing the Family and Medical Leave Act records from Dr. Krueger at the administrative level.

Moreover, none of the records provided from Dr. Krueger that were available for the ALJ's consideration constituted a "medical opinion" under the regulations, as Dr. Krueger gave no opinion on Plaintiff's functional limitations.  See R. 364-66 (other medical evidence); 369-73 (objective medical evidence); 374-77 (other medical evidence); 1442-44 (objective medical evidence); 1450 (objective medical evidence); 1473-77 (other medical evidence); 1479-83 (other medical evidence).  Thus, because Plaintiff fails to identify any specific error by the ALJ in considering the available evidence from Dr. Krueger, and because the Family and Medical Leave Act forms are not part of the administrative record, Plaintiff fails to establish the ALJ misevaluated any medical evidence provided by Dr. Krueger.

13

### C. The RFC Is Supported by Substantial Evidence

#### 1. Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing and pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).

In formulating the RFC, the ALJ found Plaintiff could perform sedentary work,

> except she can: occasionally can climb ramps and stairs: never climb ladders, ropes, or scaffolds; occasionally balance, stoop, and crouch; and never kneel or crawl. The claimant should not have to operate a motor vehicle as part of the job duties, nor work in consistently wet conditions or the extremes of humidity. She should not have to work around pulmonary irritants, such as concentrated amounts of dusts, noxious odors, fumes, mists, gases, seasonal allergens, or poorly ventilated workspaces. She should not have to work in extreme cold, or extreme heat. Her ability to understand, remember and carry out instructions allows for the performance of uncomplicated, unskilled tasks [defined as tasks that can be learned

in 1 month or less by just an on-the-job demonstration, and that require applying commonsense understanding to carry out detailed but uninvolved written or oral instructions]. She should work in a low stress setting [defined as no quotas or production-rate paced work and no jobs that require precise limits in tolerances and standards, such as bookkeeping.] Her use of judgment allows for making uninvolved work-related decisions [defined as decisions involving no more than a few concrete variables in or from standardized situations]. She is able to tolerate few changes in a routine work setting [and few changes is defined as no more than a few deviations from the core job duties]. She may have occasional interaction with coworkers; but no more than incidental in-person contact with the general public.

R. 55.

### 2. The ALJ Properly Evaluated the Evidence of Record in Formulating the RFC

#### a. Work History

Plaintiff first argues the ALJ did not properly consider her work history in determining her RFC. However, the ALJ was not required to explicitly comment on Plaintiff's work history and "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [his] decision,' so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." Lewen, 605 F. App'x at 968 (quoting Dyer, 395 F.3d at 1211); see also Cooper, 521 F. App'x at 808-09. While Plaintiff's work history would certainly fall among the total record to be considered, nothing in the regulations nor in binding precedent instructs that the ALJ must articulate how she considers a Plaintiff's work history for the purposes of her evaluation. See O'Toole v. Saul, No. 2:18-CV-121, 2020 WL 1042292, at *6 (S.D. Ga. Feb. 5, 2020), adopted by 2020 WL 1046698 (S.D. Ga. Mar. 3, 2020).

Here, it is clear the ALJ considered Plaintiff's medical condition as a whole in formulating Plaintiff's RFC. The ALJ was not required to specifically discuss Plaintiff's work history in the context of formulating the RFC. The Court also notes the ALJ was fully aware of Plaintiff's work

15

history, as she discussed Plaintiff's past work as a customer clerk and noted she "consider[ed] the claimant's age, education, work experience, and residual functional capacity" at step five of the sequential process.  R. 59-61; see Gordon v. Comm'r of Soc. Sec., No. 2:19-CV-890, 2021 WL 1207755, at *11 (M.D. Fla. Mar. 31, 2021) (no error when work history was well documented at the hearing and on the record); Coleman v. Astrue, No. 8:11-CV-1783, 2012 WL 3231074, at *5 (M.D. Fla. Aug. 6, 2012) (same).  The ALJ did not err in her consideration of Plaintiff's work history.

### b. Hypothetical Questions Posed to the Vocational Expert

Plaintiff also argues the ALJ erred when considering the testimony of VE Jessica Conard, specifically by crediting the first set of hypothetical questions posed to the VE by the ALJ, but not the second set of hypothetical questions posed by Plaintiff's attorney.  Plaintiff notes in the first hypothetical questions posed by the ALJ, the VE "stated an individual with Gipson's age, experience, and RFC could work as a customer clerk, small parts assembler, cashier, hand package[r], order clerk, document preparer, and final assembler . . . ."  Pl.'s Br., p. 11; see also R. 99-101.  Following the ALJ's hypothetical questions, Plaintiff's attorney posed another set of hypothetical questions, which asked the VE to consider whether a person's need to "prop their feet up during the day" would affect their ability to work.  R. 103.  The VE responded that a person's need to prop their legs up would likely preclude light work but would only preclude sedentary work if the person needed to prop their legs up at waist-level or higher.  See R. 103-04.  Plaintiff argues that the ALJ failed to "listen to the Vocational Expert."  Pl.'s Br., p. 11.  The Court disagrees.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine

whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985). "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question [to the VE] that accounts for all of the claimant's impairments." Barchard v. Comm'r of Soc. Sec., 628 F. App'x 685, 687 (11th Cir. 2015) (citation omitted); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (same). "But a hypothetical need not incorporate 'each and every symptom of the claimant,' nor reflect medical conditions or limitations that the ALJ found 'were either not supported by [the] medical records or were alleviated by medication.'" Jarmon v. Comm'r, Soc. Sec. Admin., No. 22-11136, 2023 WL 5950040, at *5 (11th Cir. Sept. 13, 2023) (*per curiam*) (quoting Ingram, 496 F.3d at 1270); see also Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

Here, the ALJ articulated valid reasons for not crediting the hypothetical posed by Plaintiff's attorney, instead relying on the ALJ's own series of hypothetical questions. Specifically, the ALJ found the limitation suggested by Plaintiff's attorney – the need to prop a person's legs up to waist-level or higher during work – unsupported by the medical evidence. In discussing Plaintiff's pain in her back, knees, and shoulders at step four, the ALJ noted recent "physical examinations showed intact range of motion . . . , normal gait, no obvious joint deformities, normal strength, no tenderness, and no swelling" and "x-ray imaging showed good alignment, no evidence of fracture or degenerative changes, post-surgical changes, and only mild varus alignment of the left knee." R. 56 (citations omitted). Considering Plaintiff's back and shoulder pain, the ALJ found "she routinely had full strength of the bilateral upper extremities, and imaging of the cervical and thoracic spine were normal." R. 57. Regarding Plaintiff's other

physical impairments, including asthma, fibromyalgia, and Sjogren's syndrome, the ALJ determined "these impairments appear stable with medications." Id. In light of these findings, the ALJ concluded, "the severity of the claimant's allegations is not supported by the medical evidence of record. Due to her physical impairments, to include obesity, the claimant is limited to a range of sedentary with additional limitations" as reflected in the RFC. Id.

At the next step of the sequential process, the ALJ directly addressed her rejection of Plaintiff's hypothetical, stating:

> The claimant's representative asked the vocational expert to consider the same hypothetical individual but who required the claimant to prop her legs up at the waist level. The vocational expert responded that such limitation would be work preclusive. For the reasons described in this decision, the undersigned does not find the limitation suggested by the claimant's representative to be supported by the evidence of record or persuasive in evaluating the claimant's disability.

Because the proposed limitation was unsupported, the ALJ did not have to incorporate Plaintiff's proposed restriction into the hypothetical questions presented to the VE, nor was she required to credit the VE's response to Plaintiff's hypothetical. See Crawford, 363 F.3d at 1161; Jarmon, 2023 WL 5950040, at *5; see also Hallback v. Saul, No. 8:20-CV-475, 2021 WL 1783521, at *5 (M.D. Fla. May 5, 2021), appeal dismissed sub nom. Hallback v. Comm'r of Soc. Sec., No. 21-12205, 2021 WL 6197127 (11th Cir. Nov. 29, 2021) ("Since the law judge properly rejected limitations [proposed by Plaintiff], as previously explained, he did not have to include any such limitations in the hypothetical question."); McGranahan v. Kijakazi, No. 8:22-CV-795, 2023 WL 2920020, at *8 (M.D. Fla. Mar. 8, 2023), report and recommendation adopted, No. 8:22-CV-795, 2023 WL 2644328 (M.D. Fla. Mar. 27, 2023) ("[T]he hypothetical question posed to the vocational expert clearly matches the residual functional capacity established by the law judge. Consequently, the hypothetical question is not flawed. If the plaintiff thought that the question

should have contained greater restrictions, she needed to demonstrate that the evidence compelled additional limitations in her residual functional capacity.") The ALJ's hypothetical questions accounted for all of Plaintiff's impairments as reflected in the RFC and were supported by substantial evidence, as evidenced by her thorough discussion of Plaintiff's impairments, the VE's testimony, and the evidence of record. See R. 55-61; McGranahan, 2023 WL 2920020, at *8.

In sum, the ALJ's hypothetical questions presented to the VE accurately and comprehensively reflected Plaintiff's characteristics as determined by the ALJ in formulating the RFC and determining whether Plaintiff is capable of past relevant work. Thus, the ALJ's reliance on the VE testimony in response to her hypothetical questions, while discrediting the VE's response to Plaintiff's unsupported hypothetical questions, was proper. See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

### IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 18th day of December, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA